IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JARROD DUNN | § | |
| v. | § | CIVIL ACTION NO. 6:06cv484 |
| SGT. JACOB BAYER, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Jarrod Dunn, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se,* filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights.  The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the lawsuit pursuant to 28 U.S.C. §636(c).  As Defendants, Dunn named Sgt. Jacob Bayer, Major Jimmy Bowman, and Warden E.A. Westfall.

At the hearing and in his complaint, Dunn says that he had been having problems with Sgt. Bayer.  On December 8, 2005, Dunn says that he was put in pre-hearing detention for a disciplinary charge of possession of contraband.  Sgt. Bayer asked for his statement on the case, and Dunn replied that the case was a lie.  Bayer replied by threatening him.

Dunn stated that he wrote to the Office of the Inspector General, but nothing was done.  Bayer kept coming by his cell and threatening him, and Dunn complained about this to various officers, including Bowman and Westfall.  Dunn states that a lieutenant told him not to worry, and that he walked to Warden Westfall and the warden also told him not to worry.  When he talked to Bowman, Dunn says, the major told him to "stop being a sissy."

On February 22, 2006, in the early morning hours, Dunn says that Bayer came to his cell and told him that "we need to talk."  Dunn thought that Bayer wanted to resolve the problem and went over to the door.  When he did so, he says, Bayer asked him "have you ever seen one of these?"

1

He showed Dunn a small black container on a key-ring.  When Dunn bent down to look at it, Bayer sprayed him in the face with some type of chemical agent.  Dunn stated that this was not the same type of pepper spray that TDCJ uses, because it caused chemical burns.

Dunn said that he was afraid, and so he waited until the next shift to ask for medical care.  He was taken to the infirmary, and was found to have chemical burns on the left side of his face.  He was given artificial tears for his injured left eye, and when he arrived at the Polunsky Unit, he was given an eye patch.[1]  Dunn also said that he was diagnosed as suffering from post-traumatic stress disorder and a mood disorder as a result of his eye injury.

Dunn testified that he has been told by medical personnel that they do not know why his eye injury persists.  A physician's assistant named Overbeck told him that he has photophobia, an aversion to light.  He says that his eye is "real scratchy," that it stays red, and that he has to put warm water on it in the morning to clean off accumulated discharge.  He can only see images, dimly, from his left eye, even with glasses.  Dunn acknowledged that he has refused new glasses, saying that they would do no good.

Dunn explained that Bayer had taken a pressure washer out of the shower and had taken it home, and another inmate told the warden about it, but Bayer blamed Dunn for telling.  After Bayer began threatening him, Dunn said that he told others about the washer.  Dunn also stated that he had received a disciplinary case for establishing an inappropriate relationship with an officer, who had supposedly brought him tobacco, but that he, Dunn, had never received any tobacco.

Dunn testified that he told Major Bowman that Bayer was going to do something to him, and said that Bowman talked to Lt. Hill, who interviewed Dunn about it.  Hill said that he would give Dunn's statement to Bowman, but nothing ever came of it.

Next, Dunn said that Warden Westfall should have followed up and done something about the problem.  He said that his mother called the prison while Dunn was in pre-hearing detention, and that she was told that Dunn had been moved away from Bayer when this was not true.

---

[1]The Court notes that Dunn was wearing an eye patch at the evidentiary hearing.

Nurse Barbara Hughes, a correctional nurse who was also present at the <u>Spears</u> hearing, testified under oath concerning the contents of Dunn's medical records. Nurse Hughes said that according to these records, Dunn was brought to the clinic on February 22, 2006, saying that he had been sprayed. An examination showed redness, swelling, and blistering around the left eye and forehead, which were diagnosed as chemical burns. His chart was referred to the doctor. Nurse Hughes noted that Dunn had made other complaints about pain and blurred vision, and that he had received an eye patch. She also stated that he had made complaints about a "gravelly feeling" in his eye.

Warden Pratt, a TDCJ-CID warden who was present at the hearing, testified under oath that when supervisors receive complaints of this type, they normally commence a life endangerment investigation. The prison records in this case show that a life endangerment investigation was initiated immediately prior to the incident, and that on February 21, the day before the assault happened, the Unit Classification Committee recommended that he receive a unit transfer. The specific justification for this recommendation was the allegation that he had been involved with trafficking and trading tobacco, although Sgt. Bayer's name also came up during the investigation.

Dunn stated that Warden Westfall had called him out to talk about the tobacco allegation, and he denied knowing anything about it. During this conversation, he told Westfall about the threats which he had been receiving, and Westfall said "don't worry about it."

<u>Legal Standards and Analysis</u>

Dunn's claims against Bayer, if proven, clearly show a potential constitutional violation. His claims against Bayer require further judicial proceedings.

Dunn also asserts that Warden Westfall and Major Bowman were deliberately indifferent to his safety. The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...

But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, Dunn says that he told Warden Westfall and Major Bowman about the threats which he had been receiving, and these officials told him not to worry about them.  The However, the prison records show that a life endangerment investigation was also undertaken, with the result that the Unit Classification Committee recommended that Dunn be transferred.  The fact that this recommendation did not come about in time to prevent the assault does not show that the warden or the major were deliberately indifferent to Dunn's safety as set out in Farmer.

Furthermore, the mere fact that Dunn had complained about being in danger does not translate to knowledge of the danger on the part of Westfall or Bowman.  Prison officials are not obligated to believe every allegation made to them by prisoners that a danger exists.  *Cf.* Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (no protected liberty interest in having grievances resolved to an inmate's satisfaction).  Dunn's complaint at most gave rise to a duty on the part of the officials to investigate his claims, which was in fact done.  Dunn has not shown that Major Bowman or Warden Westfall knew of and disregarded an excessive risk to his health or safety, and so his claims against them are without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Dunn's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted against the Defendants Warden Westfall and Major Bowman.  It is accordingly

ORDERED that the Plaintiff's claims against the Defendants Warden Westfall and Major Bowman are hereby DISMISSED with prejudice as frivolous.  It is further

ORDERED that the Defendants Warden Westfall and Major Bowman are hereby DISMISSED as parties to this lawsuit.  The dismissal of these claims and parties shall have no effect upon the Plaintiff's claims against the Defendant Jacob Bayer.  Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

**So ORDERED and SIGNED this 13th day of August, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE